DECISION
Before this Court for decision is an appeal by Robert Neri (Neri or Petitioner) of a decision rendered by a hearing board convened pursuant to the Law Enforcement Officers' Bill of Rights (LEOBOR) which decision sustained the Cranston Police Department's (Department) recommended sanction of termination. Neri now prays that this Court vacate the Board's decision, while the Cranston Police Department maintains the decision should be upheld.
 FACTS AND TRAVEL
On December 14, 2009, the Chief of the Cranston Police Department issued a Complaint against Neri alleging he had violated nine rules and regulations of the Department; specifically:
 (1) Neri engaged in conduct unbecoming an officer.
 (2) Neri neglected his duty as a police officer. (3) Neri failed to devote his full time and attention to the service of the Department and to the citizens of the community (City of Cranston).
 (4) Neri engaged in behavior that would be construed as gross incompetence.
 (5) Neri failed to respond punctually.
 (6) Neri failed to record all necessary information. *Page 2 
 (7) Neri failed to conduct himself in a professional and ethical manner.
 (8) Neri created a feeling of insecurity in the City.
 (9) Neri engaged in conduct that created a "negative" public relations image for the Cranston Police Department.
Because of the nature of the offenses for which Neri was charged, the Chief recommended he be terminated from service as a Cranston Police Officer.
A Hearing Committee (Committee) was convened pursuant to the LEOBOR and after a two-day hearing, the Committee found Neri guilty of all nine charges and by a vote of 2-1 sustained the Chief's recommendation that Neri be terminated.
Although subject to different interpretation, the evidence adduced at the hearing is really not in dispute, nor in dispute is the credibility of the witnesses presented before the Committee. Indeed, Neri's credible testimony, itself, is sufficient to sustain the Committee's findings of fact. He candidly acknowledged having three incidents of sexual contact with a willing 22-year-old consenting female during a two-week period in 2009 while on duty and off his post.
 STANDARD OF REVIEW
The Law Enforcement Officers' Bill of Rights is the exclusive remedy for law enforcement officers who are under investigation by a law enforcement agency for any reason that could lead to disciplinary action, demotion or dismissal. Cityof East Providence v. McLaughlin,593 A.2d 1345, 1348 (R.I. 1991). Decisions of the Hearing Committee convened under the Law Enforcement Officers' Bill of Rights are considered administrative agency decisions and governed by Sections 42-35-15 and 42-35-15.1. DelSanto v. Town ofBristol, 2006 WL 1586697 at 3 (R.I. Super., June 8, 2006). Accordingly, the Superior Court's review of a Hearing Committee decision is governed by Section 42-35-15(g), which provides:
 "The Court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The Court may affirm the decision of the agency or remand the case for *Page 3 
further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
In interpreting Section 42-35-15(g), our Supreme Court has stated in Culhane v. Denisewich, 689 A.2d 1062
(R.I. 1997) ("[t]he review by this Court of the findings of a hearing committee convened pursuant to the Law Enforcement Officers' Bill of Rights is both limited and highly deferential"). Moreover, the Court must "neither weigh the evidence nor make findings of fact; instead, . ., [it must] examine the extensive record to determine whether some competent evidence exists to support the committee's decision." City of EastProvidence v. McLaughlin, 593 A.2d 1345, 1348 (R.1. 1991). "Legally competent evidence is defined as `such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance.'" Foster-Glocester Regional School Committee
v. Board of Review, 854 A.2d 1008, 1012 (R.I. 2004).
Simply put, it is not the prerogative of the Superior Court to substitute its judgment for that of the Hearing Committeeunless it can be found, as argued by Neri that:
(1) The Hearing Committee's decision to terminate Robert Neri is a clearly unwarranted abuse of discretion, or
(2) The Hearing Committee's decision to terminate Robert Neri for neglect of duty is clearly erroneous. *Page 4 
Counsel for Neri points to decisions of other police departments and other hearing committees that imposed sanctions against other officers, less than termination, for conduct more egregious than that of Neri.
He further argues that Neri's past good record, and his candid and credible response to the questions put to him during this investigation, warrants a suspension, not termination. Indeed, one of the three distinguished members of this Hearing Committee agreed, in essence, that termination was not required under the circumstances.
Although impressive, the arguments advanced against termination are not persuasive.
As stated, this Court is duty-bound to simply examine the record and determine whether there is competent evidence to support the Committee's decision to terminate Neri.
The Committee heard from and accepted the Chief's testimony that:
(1) "Neri's acts are so far beyond what can reasonably be expected of someone in the law enforcement profession. They violate every code of conduct and ethics that a police officer is supposed to stand for." (Tr., Vol. III at 40: 5-9.)
(2) "Neri's behavior revealed an indifference to his duty to the citizens on his beat." (Tr., Vol. III at 42.)
(3) "The picture of Neri in the woods with his uniform pants around his ankles, answering a call from his shoulder mic while he's engaged in a sexual act, I can't shake that. I can't explain that. In 23 years, I've never heard of it. I've never heard of it. No one expects human beings to be perfect. This goes way beyond that." (Tr., Vol. III at 43.)
(4) "As a police officer, our jcb is to look out for people like this, to guide them in the right direction, not take advantage of them, not seek them out and exploit them; and no matter how I look at this, that's all I see." (Tr., Vol. III at 43.)
(5) "[T]hat none of these intedudes ever happened while he was off duty. He never called her while he was off duty. He never met with her when he was off duty, and that points a troubling picture." (Tr., Vol. III at 44.)
(6) "[T]hat Neri's return, I don't think there's any question, would undermine the morale, the efficiency, the effectiveness of the Cranston Police Department." (Tr., Vol. III at 43.) *Page 5 
(7) "[T]hat during Neri's five years of service time, he averaged less than two car stops per week, three citations, and one arrest per month, 40% of which were attributable to 2004 when he was on probation. . . . I don't know what he was doing while he was out there, I'm sad to say. I don't think any rational conclusion can be made of this other than to recommend termination." (Tr., Vol. III at 46-47.)
 CONCLUSION
Clearly, there was substantial evidence in the record to support the Committee's decision to terminate Neri's employment as a Cranston Police Officer. The decision to terminate was neither an abuse of discretion nor was it clearly erroneous.
The Committee's decision terminating Neri's employment as a Cranston Police Officer is affirmed and Neri's appeal is denied.
Counsel for the City is directed to prepare and submit an Order consistent with this Decision.